## [No. 1768.]

### CHARLES DUPREE *v.* THE STATE.

1. CHARGE OF COURT — CIRCUMSTANTIAL EVIDENCE.— When the inculpatory evidence against a defendant on trial is purely circumstantial, it is the imperative duty of the court to give in charge the law applicable to such evidence.

2. SAME — VOLUNTARY RETURN OF STOLEN PROPERTY.— See the statement of the case for evidence in a theft case *held* to demand a charge upon the voluntary return of stolen property within a reasonable time and before prosecution was instituted.

APPEAL from the Criminal District Court of Harris. Tried below before the Hon. Gustave Cook.

In this case the appellant was convicted upon an indictment that charged him with the theft of $156 in United States currency, and one pocket-book of the value of $1, the property of T. H. Scanlan, in Harris county, Texas, on the 21st day of September, 1883. He was awarded a term of four years in the penitentiary as punishment.

Timothy H. Scanlan was the first witness for the State. He testified that, on the 25th day of September, 1883, he had taken from him, without his consent, $156 in United States currency, consisting of fifteen ten-dollar bills, one five-dollar bill, and one one-dollar bill. This money was taken on a sleeping-car of the International & Great Northern Railroad, near Palestine, in Anderson county, Texas. Witness got up before any one else in the car, very early in the morning, and went to the wash-room. He was in the wash-room about five minutes, when he missed his money and returned to his berth to look for it. He had placed the money in an ordinary-sized envelope, which he placed inside the pillow-slip of the pillow on which he slept. The defendant, who was the sleeping-car porter, was making up the bed in the berth occupied by the witness. He had already removed the sheets from the bed, and the slip from the pillow, and was then moving the mattress from the lower to the upper berth. Witness asked the defendant if he had, or had seen, his money. Defendant replied that he did not have it, and had not seen it. Witness replied that he, defendant, did have it. Witness took a seat near the berth, and had the defendant shake the sheets and pillow-slip, and shook them himself, but did not find the missing money. Witness charged the defendant frequently with having the money, but he persistently denied it. Witness then told him that he would keep a watch on him, and settle with

him on reaching Houston.   Witness then telegraphed to Hennessey, the detective, to meet him at the Houston depot on the arrival of the train.   Witness was met by detective Long, of Hennessey's agency, at the Houston depot, to whom he related the circumstances of his loss.   Long told witness that he could recover the money.   The defendant was present and heard the witness talking to Long, but he could not say that the defendant knew Long to be a detective.   Long spoke to defendant about the money, and he again denied all knowledge of it.   Witness recovered his money through Hennessey's detective agency.   No one in the sleeper was up when the witness got up on the morning he lost his money, but several berths were occupied by passengers.

John Long was the next witness for the State.   He testified that at the time of the alleged theft he was a detective, and in the employ of Hennessey's agency, at Houston.   In answer to a telegram received by Mr. Hennessey, the witness was despatched to the depot to meet Mr. Scanlan.   On his arrival, Mr. Scanlan told witness of his loss, and pointed out the defendant as the man whom he suspected of the theft.   Witness talked to the defendant about the money, but he denied all knowledge of it.   Witness then told Scanlan that he could recover the money, and boarded the train as it pulled out for Galveston.   Witness told the defendant to search among the soiled sheets in the locker for the money.   He, with the assistance of the witness, searched twice through the soiled linen and sheets in the locker, without finding the missing money.   Witness finally sat down in the smoking room, and said to defendant: "Now, I don't want to have any trouble with you.   If you search the locker again, don't you think you will find it?"   Defendant replied: "Yes, I think so."   He then went into the wash room, stayed about two minutes, came back with his hands in his vest pocket, and proceeded to examine the locker again, witness watching him closely.   After taking out three or four layers of soiled sheets, the witness saw the money roll out from between the linens.   The money was in a roll, but not in an envelope.   There were fourteen ten-dollar bills, one five and one one-dollar bill.   Witness told him to shake again, and see if he could find the remaining ten-dollar bill.   That bill the witness found and took from the defendant's hand,— the hand with which he held and shook the sheets.   The witness affirmed positively that the defendant had that bill in his hand at that time.   This occurred near Allen, in Harris county, Texas.   Witness did not, before the money was recovered, arrest or threaten to arrest the defendant.   Witness had on no badge at the

time, though he was a special policeman, and he could not say that the defendant knew him to be an officer or detective. Witness received a monthly salary from Hennessey, and received no extra pay for this service. The defendant, the conductor and witness were the only parties present when the money was searched for and found.

James and George Dixon testified, for the defense, that the defendant was about seventeen years old; that they had known him from infancy, and had never known his honesty to be impeached.

The motion for new trial raised the questions discussed in the opinion, and denounced the verdict as unsupported by the evidence

*Crank & Taliaferro*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. "It is well settled that when the inculpatory evidence in a case is purely circumstantial, the charge of the court must expound to the jury the nature and conclusiveness of that character of testimony, to warrant a conviction upon it." (*Gonzales* v. *The State*, 12 Texas Ct. App., 657, and *Vaughn* v. *The State*, decided at the present term, *ante*, p. 562, in which all the authorities are collected.) No such charge was given in this case.

We are also of opinion that the facts in evidence required, as part of the law applicable to the case, a charge upon the voluntary return of stolen property within a reasonable time and before any prosecution was commenced therefor. (Penal Code, art. 738; *Allen* v. *The State*, 12 Texas Ct. App., 190; *Wheeler* v. *The State*, 15 Texas Ct. App., 607; *Bird* v. *The State*, 16 Texas Ct. App., 528.)

Because the charge of the court failed to present and submit the law applicable to the case, the judgment is reversed and the cause remanded for another trial.

*Reversed and remanded.*

[Opinion delivered February 28, 1885.]